UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Laura A. Zeer                                            Case No. 09-72913
                                                         Chapter 7
                        Debtor.                          Hon. Marci B. McIvor
_____/

K. Jin Lim, Trustee,

                        Plaintiff,

v.                                                       Adv. Pro. No. 10-6145

Laura A. and Michael Zeer,

                        Defendants.
_____/

## OPINION GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

This matter is before the Court on the parties' cross-Motions for Summary Judgment.

Plaintiff/Trustee seeks judgment on a five-count Amended Adversary Complaint asserting that

Debtor should be denied a discharge under 11 U.S.C. §§ 727(a)(2), (a)(3), (a)(4), and (a)(5).

Plaintiff/Trustee also seeks to avoid alleged fraudulent transfers under both the Bankruptcy Code

(11 U.S.C. §§ 544 and 548) and state law (Mich. Comp. Laws § 566 *et. seq.)*  For the reasons

stated in this Opinion, Plaintiff/Trustee's Motion for Summary Judgment is denied, Defendants'

Motion for Summary Judgment is granted, and Plaintiff/Trustee's Amended Complaint is

dismissed in its entirety.

## I. Facts

On August 6, 2007, National City Bank made a $487,500 loan to Lazz LLC (the "NCB

loan").  That loan was secured by 2.6 acres of vacant land in Shelby Township and personally

guaranteed by defendant/debtor Laura Zeer Laura Zeer, who was a member of the LLC.[1] (Copies

of the loan note and guaranty attached to PNC Bank's Proof of Claim–PNC being the successor in

interest to National City Bank). A copy of the Buyer's Settlement Statement (completed by

Metropolitan Title Company) indicates that the purchase price (labeled "total consideration") was

$750,000. Plaintiff/Trustee's Amended Motion for Summary Judgment, Ex. A (Docket no. 87).

Of that amount, $487,500 was provided by the National City Loan. A copy of the Seller's

Estimated Settlement Statement for the loan indicates that the seller was A & Z Development

Corporation, whose president was Michael Zeer, Debtor's husband.[2] Because this was not an

arm's length transaction, i.e. the seller was an entity in which Debtor's husband had some

interest, this transaction does not appear to have been a true sale but rather some sort of

refinancing transaction. A Disbursement Summary Report (as well as a copy of the actual check)

indicates that $340,000 of the loan proceeds were disbursed by Metropolitan Title directly to

Trio Investments, LLC, an entity owned by a friend of the Zeers, Patrick George. Those funds

purportedly repaid a loan Mr. George made to defendant/debtor Laura Zeer's husband Michael

---

[1]The exact nature and extent of Lazz LLC's business is unclear. There are no articles of
incorporation or financial statements for the company. It is unclear whether there were any
members other than defendant/debtor Laura Zeer. Defendant testified that she was the sole
member of Lazz. (Deposition of Laura Zeer, February 9, 2010, Plaintiff/Trustee's Ex. N, at 20).
It appears that it was formed for the sole purpose of holding the Shelby Township property and
obtaining the loan. While there is some evidence that the property was going to be developed as
a strip mall (*see* Plaintiff/Trustee's Ex. L and M, affidavits of NCB employees Lon Keast and
Sue Misajlovski), it is not clear who was in charge of its development or how far development
proceeded. The mall was never fully constructed.

[2]Because no title work was submitted to the Court, it is not clear who actually owned the
property at the time it was sold to Lazz. It is also not clear who owned A & Z Development.

2

Zeer.[3]  Lazz received two disbursement checks totaling $136,647.36 (a check for $133,503.45 and a check for $3,143.91).  In her deposition, defendant/debtor Laura Zeer indicated that the $487,500 borrowed by Lazz "was used to do a build-out on that property [Shelby Township] and the deal ended up falling through."  (L. Zeer Dep., Feb. 9, 2010, at 21-22).

In applying for the NCB loan, defendant/debtor Laura Zeer, through Lazz, signed a Small Business Credit Application dated July 10, 2007 (Plaintiff/Trustee's Ex. M-1).  The loan application discloses no financial information about Lazz, but Defendant/debtor Laura Zeer, in her capacity as guarantor on the loan, discloses "total annual income" of $175,000, "total personal assets" of $2,830,000, "cash and investments" of $400,000, "total personal liabilities" of $1,140,000, and a residence worth $1,100,000.  Plaintiff/Trustee's Exhibit M-2 is a statement to the bank, signed by both Defendants, which indicates that Defendants are married but file taxes separately, and are "independent" with "separate careers."

In applying for the loan, defendant/debtor Laura Zeer also submitted a personal financial statement.  That statement, dated June 6, 2007 (Plaintiff/Trustee's Ex. L-2)  disclosed that Debtor had $400,000 in cash, ½ ownership interests in four businesses valued at $1,230,000 ( Debtor's share),[4] receivables of $250,000, jewelry valued at $40,000 and cars valued at $60,000.  The only

---

[3]Plaintiff/Trustee's Ex. I is a copy of an Amended Balloon Promissory Note dated May 12, 2006, in the amount of $344,000.  The maker of the Note is Michael Zeer, and the payee is Patrick George.  The maturity date of the note is May 12, 2007.  The note is secured by real property.  The location of the real property is unclear.

[4]The businesses are Equity Partner in Battle Creek (commercial vacant land) valued at $150,000, Sterling Heights Property 50% (commercial income building) valued at $230,000, Equity in Zeer Co. (50%) valued at $250,000 and Florida Property (50%) valued at $600,000.

3

liability listed is "miscellaneous" in the amount of $40,000, leaving a net worth of $1,940,000.[5]

On March 4, 2008, National City Bank sent defendant/debtor Laura Zeer and Lazz, LLC a demand letter, indicating that the loan was in default for failure to pay principal and interest. (Plaintiff/Trustee's Ex. B). NCB foreclosed its interest in the property on May 30, 2008 by purchasing the property at sheriff's sale for $235,000.

In March, 2008, defendant/debtor Laura Zeer, who was listed as a co-owner of a joint checking account with her husband, defendant Michael Zeer, at Comerica Bank (account 3276), had herself removed from the account. Plaintiff/Trustee's Ex. C is the February/March 2008 bank statement from that account. It discloses an opening balance of negative $5,122.92 and a closing balance of $78.08. The March/April 2008 bank statement discloses an opening balancer of $78.08 and a closing balance of $1,890.62.

On March 26, 2008, defendant/debtor Laura Zeer borrowed $617,500 from Citizens First Mortgage, LLC (the "Citizens Loan"). The loan was secured by a 4.05 acre parcel of vacant property located in Davison Township. Defendant/debtor Laura Zeer testified that the Davison property was deeded to her by an entity called Davison Irish, LLC, because she "was [the] only one that qualified to get a mortgage to do the construction work on it." (L. Zeer Dep., Feb. 9,

---

[5]According to Plaintiff/Trustee's Exhibit E, Laura Zeer was the co-owner of a Comerica Bank account (account 9065) with Christopher Zeer and Hikmat Zeer. An account summary for January, 2007 indicates that there was $415,170.81 in the account. On March 16, 2007, "ownership and control" of the account was transferred solely to Hikmat Zeer. Plaintiff/Trustee's Ex. F. It is not clear whether the $400,000 listed as cash on Debtor's June, 2007 financial statement was the money in the 9065 account. Laura Zeer's name was removed from the account three months prior to the date on the financial statement.

4

2011 at 26).[6]  A Receipts and Disbursements Ledger indicates that Defendant received four

checks totaling $ 604,395.50 pursuant to this transaction.[7]  Defendant/debtor Laura Zeer testified

that the money was used for construction costs, but that the project fell through.  (L. Zeer Dep.,

Feb.  9, 2010 at p. 32).  Defendant/debtor and her husband both testified that the proceeds from

the loan were divided three ways-- between the two owners of Davison Irish and defendant

Michael Zeer. Michael Zee received $158,000.  (L. Zeer Dep. 9, 2010 at 45-48.).[8]

On July 28, 2009, defendant/debtor Laura Zeer signed and submitted an updated personal

financial statement to NCB (on an NCB form) (Plaintiff/Trustee's Ex. L-3).  That statement

indicates that she was an unemployed  "housewife" with $1,000 in cash, $400,000 in real estate,

$20,000 in personal assets, $750,000 in secured notes payable, and $70,000 in real estate

mortgages.

On October 26, 2009, defendant/debtor Laura Zeer filed a voluntary chapter 7 bankruptcy

petition.  Included on Schedule A is the vacant lot in Davison, Michigan.  According to Schedule

A, it is owned solely by Debtor and is valued at $200,000 with an outstanding mortgage of

$612,669. Debtor's Statement of Intention indicates that she is surrendering this property.

Schedule B discloses $3,000 in jewelry.  Schedule B does not include any of the business

interests included on Debtor's June, 2007 financial statement. Schedule F (unsecured nonpriority

claims) includes a 2008 "lawsuit" by National City Bank valued at $325,145 which represents the

---

[6]It appears that Davison Irish LLC is a partnership of Debtor's husband, Patrick George, and Selwin Kesto. (L. Zeer Dep., Feb. 9, 2010 at 43-48).

[7]Defendant/debtor Laura Zeer presumably owns this property because it is listed on her bankruptcy schedule A.

[8]Without the articles of incorporation, which were not filed with the Court, it is not clear who actually owned Davison Irish.

5

deficiency balance owed on the NCB loan.

Schedule I discloses that Defendants have three children (ages 2, 4, and 6) and that defendant/debtor Laura Zeer is employed as a sales representative at Cavalier Telephone LLC. She has been employed at Cavalier for 8 months and makes $51,996 per year. Defendant/Debtor's husband, defendant Michael Zeer, is unemployed.

Defendant/Debtor's Schedule of Financial Affairs (SOFA) indicates that her 2009 year-to date income was $30,000. With respect to SOFA item 10, "other transfers", which requires a debtor to disclose "all other property, other than property transferred in the ordinary course of the business or financial affairs of the debtor, transferred either absolutely or as security within two years immediately preceding the commencement of this case," defendant/debtor Laura Zeer indicates that there are no transfers.

On November 23, 2009, PNC Bank, as successor to National City Bank filed a $299,601.56 unsecured claim in Defendant/debtor Laura Zeer's bankruptcy case. Citizens Bank has not filed a claim.

On February 2, 2011, Plaintiff, the Chapter 7 Trustee, filed a five-count Amended Adversary Complaint seeking denial of discharge under 11 U.S.C. §§ 727(a)(2), (a)(3), (a)(4) and (a)(5) (Counts I through III and V). Plaintiff/Trustee also seeks to avoid alleged fraudulent transfers under both the Bankruptcy Code (to 11 U.S.C. §§ 544 and 548) and state law (Mich. Comp. Laws § 566 *et. seq.)* (Count IV). Neither NCB nor Citizens Bank have filed an action to block Debtor's discharge.

Plaintiff/Trustee originally filed a Motion for Partial Summary Judgment as to Counts II, III and V on April 29, 2011. Defendant filed a cross-Motion for Summary Judgment on that same

date. Plaintiff/Trustee filed an Amended Motion for Summary Judgment as to All Counts on July 22, 2011. Defendants filed an Amended Cross-Motion on that same date. Thus, presently before the Court are Cross-Motions for Summary Judgment on all counts of Plaintiff/Trustee's First Amended Complaint.

## II. Jurisdiction

Bankruptcy courts have jurisdiction over all cases under Title 11 and all core proceedings arising under Title 11 or arising in a case under Title 11. *See* 28 U.S.C. §§ 1334 and 157. Core proceedings include proceedings to determine dischargeability. 28 U.S.C. § 157(b)(2)(I) and fraudulent transfers 28 U.S.C. § 157(b)(2)(H).

## III. Standard for Summary Judgment

Fed. R. Civ. P. 56(c) for summary judgment is incorporated into Fed. R. Bankr. P. 7056(c). Summary judgment is only appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). After adequate time for discovery and upon motion, Rule 56(c) mandates summary judgment against a party who fails to establish the existence of an element essential to that party's case and on which that party bears the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The movant has an initial burden of showing "the absence of a genuine issue of material fact." *Celotex*, 477 U.S. 317, 323. A "genuine" issue is one where no reasonable fact finder could return a judgment in favor of the non-moving party. *Berryman v. Rieger*, 150 F.3d 561,

566 (6th Cir. 1998) (citing *Anderson*, 477 U.S. at 248). Once the movant meets this burden, the

non-movant "must do more than simply show that there is some metaphysical doubt as to the

material facts. If the record taken in its entirety could not convince a rational trier of fact to

return a verdict in favor of the non-moving party, the motion should be granted." *Cox v.*

*Kentucky Dept. of Transportation*, 53 F.3d 146, 149-50 (6th Cir. 1995) (internal quotation marks

and citation omitted).

## IV.  Analysis

### A.  The Trustee's Causes of Action Under 11 U.S.C. § 548 and MCL 566.34 (Count IV)

The Bankruptcy Code's fraudulent conveyance provision is found at 11 U.S.C. § 548. It

provides in relevant part:

> (a)(1) The trustee may avoid any transfer (including any transfer to or for the benefit of an insider under an employment contract) of an interest of the debtor in property, or any obligation (including any obligation to or for the benefit of an insider under an employment contract) incurred by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily—
>
>> (A) made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted; or
>>
>> (B)(I) received less than a reasonably equivalent value in exchange for such transfer or obligation; and
>>
>> (ii)(I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;

11 U.S.C. § 548. Section 548(a)(1)(A) contemplates a showing of actual intent to defraud while

section 548(a)(1)(B) contemplates constructive (or implied) fraud. The trustee bears the burden

of proving the elements of a fraudulent conveyance by a preponderance of the evidence. *Lisle v.*

8

*John Wiley & Sons, Inc. ( In re Wilkinson*), 319 B.R. 134 (Bankr.E.D.Ky.2004).

Using the trustee's powers under 11 U.S.C. § 544(a), the Trustee also seeks to assert

claims under Michigan's fraudulent transfer statute, M.C.L. § 566 *et. seq.* While Plaintiff/Trustee

in the present case does not specify which section of the state statute supports her claims, the

Court assumes she is relying on M.C.L. § 566.34, which is similar to § 548 of the Bankruptcy

Code. That section provides:

> (1) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation in either of the following:

>> (a) With actual intent to hinder, delay, or defraud any creditor of the debtor.

>> (b) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor did either of the following:

>>> (I) Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction.

>>> (ii) Intended to incur, or believed or reasonably should have believed that he or she would incur, debts beyond his or her ability to pay as they became due.

> (2) In determining actual intent under subsection (1)(a), consideration may be given, among other factors, to whether 1 or more of the following occurred:

>> (a) The transfer or obligation was to an insider.

>> (b) The debtor retained possession or control of the property transferred after the transfer.

>> (c) The transfer or obligation was disclosed or concealed.

>> (d) Before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit.

>> (e) The transfer was of substantially all of the debtor's assets.

9

(f) The debtor absconded.

(g) The debtor removed or concealed assets.

(h) The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred.

(I) The debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred.

(j) The transfer occurred shortly before or shortly after a substantial debt was incurred.

(k) The debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

M.C.L. 566.34(1). Like the Bankruptcy Code's fraudulent conveyance provision, the state statute contemplates transfers made with actual intent to defraud (§ 566.34(1)(a)) and well as constructive (or implied) fraud (§ 566.34(1)(b)). Because a debtor seldom admits to having acted with actual intent to defraud creditors, the Michigan fraudulent conveyance statute sets forth circumstantial evidence (known as "badges of fraud") for courts to consider in determining whether a debtor acted with actual intent to defraud. M.C.L. 566.34(2).

The Plaintiff/Trustee's theory is that defendant/debtor Laura Zeer transferred the proceeds from the NCB loan and the Citizens Bank loan and that those transfers are fraudulent as to creditors. Specifically, the Plaintiff/Trustee seeks to recover $627,394.00 from defendant Michael Zeer as the recipient of the alleged fraudulent transfers. The facts do not support a fraudulent transfer action against defendant Michael Zeer. The Court will address each alleged fraudulent transfer separately.

1. The NCB Loan

10

As noted above, on August 6, 2007, National City Bank made a loan in the amount of $487,500 to Lazz, LLC. The loan was secured by 2.6 acres of vacant land in Shelby Township. Repayment of the loan was guaranteed by defendant/debtor Laura Zeer who was a member of the LLC. A copy of the disbursement summary report prepared by Metropolitan Title Company shows that $340,000 of the loan proceeds were disbursed from the Bank directly to Trio Investment, LLC, an entity owned by a friend of the Zeers. Lazz, LLC received two disbursements checks totaling $136,647.36.

At his deposition, defendant Michael Zeer testified about the disbursement of the loan proceeds. Defendant Michael Zeer testified:

Q. Are you familiar with the National City Loan?

A. Yes, I am.

Q. How much cash came out of that transaction.

A. I don't recall exactly. I know it was – I don't have the document. You have the file on that. I gave you that file.

Q. Okay. Well, the mortgage amount was – in 2007 it was about $487,000, that sound correct?

A. I believe so.

Q. Where did that money go?

A. That money went to pay off some gambling debts as well that I accumulated over the last, probably, ten years. And I had gotten a loan from Mr. George for substantial amount of that money and I believe the check I got back, that check, most of it, I say a good lump sum of it went to Mr. George. I paid beck the money I borrowed from him.

Q. Was the property land in Shelby Township?

A. Yes.

Q. And that land is owned by L-a-z-z-, Inc.?

11

A. I believe so, yes.

Q. And who owns that company?

A. That was a company we formed with Laura.

Q. And was there a prior mortgage on that property.

A. Yes, there was, by Mr. George.

Q. By Mr. George. So when the loan was made, did the bank pay off some portion of the loan proceeds to Mr. George?

A. Uh, they paid it to me and I paid it to Mr. George.

Q. How much did you get initially, was it the $487?

A. I don't know the exact amount of it I got.

Q. Well, the note is $487,500, you see that?

A. I see that. I don't see a closing statement. You have a closing statement?

. . .

Q. So you probably netted somewhere in the area of 450, is that about right?

A. Possibly.

Q. What happened to that money?

A. Paid back to Mr. George close to 400,000.

Q. To Patrick George?

A. I believe so, yes.

Deposition of defendant Michael Zeer, March 16, 2010 at 56-57.[9]

---

[9]The closing statement from the loan transaction partially corroborates Mr. Zeer's testimony. The closing statement (Plaintiff/Trustee's Ex. A) verifies that $340,000 of the loan proceeds were paid directly to Trio Investments, not to Lazz or Laura Zeer. There seems to be no dispute that Lazz immediately paid the balance of the proceeds (minus costs and fees) to Michael

The Court first notes that the $340,000 loan proceeds paid directly by Metropolitan Title to Mr. George cannot constitute a transfer made by defendant/debtor Laura Zeer because the transfer was directly from the Bank (or it's representative, the title company) to Mr. George. To the extent that defendant/debtor Laura Zeer distributed the remaining loan proceeds to Defendant Michael Zeer, the Plaintiff/Trustee's argument that the distribution is a fraudulent transfer fails under both the Bankruptcy Code and state law.

The Bankruptcy Code's fraudulent transfer provision is found at 11 U.S.C. § 548. That section is limited to transfers made within two years of the filing of the bankruptcy petition. 11 U.S.C. § 548(a)(1). The NCB loan was made on August 6, 2007. The proceeds were transferred simultaneously with the closing of the loan. Defendant filed her bankruptcy petition on October 26, 2009. The transfers are, therefore, beyond the two year period required by the Code.

The Plaintiff/Trustee may, pursuant to 11 U.S.C. § 544, employ state law to recover fraudulent transfers. The state law limitation period for fraudulent transfers is six years. However, Plaintiff/Trustee cannot establish any of the elements of actual or constructive fraud. MCL 566.34(1)(a) states that a transfer made or an obligation incurred by a debtor is fraudulent as to a creditor if the debtor made the transfer or incurred the obligation with actual intent to hinder, delay or defraud the creditor. The statute describes two types of conduct: incurring an obligation or making a transfer with intent to defraud.

With regard to incurring an obligation, defendant/debtor Laura Zeer did not incur an obligation to NCB. The obligation was incurred by Lazz, LLC. In any case, there is no document

_____

Zeer.

13

or testimony that Lazz or Defendant (the guarantor on the obligation) intended to defraud NCB at the time the NCB loan was made. The loan was secured by a mortgage on real property, and the Court notes that PNC Bank, as successor to NCB, has not filed any pleadings alleging that either Lazz or Defendant engaged in fraud in obtaining or guaranteeing the loan.

With regard to making a transfer, defendant Michael Zeer's testimony is that the $340,000 paid at closing to Trio Investment, was repayment of a secured loan made by the principal of Trio, Patrick George and that the payment was made directly by Metropolitan Title to Mr. George. Thus, Lazz, LLC and/or defendant/debtor Laura Zeer did not transfer $340,000 of the loan proceeds because those proceeds were paid directly to Trio Investment. Regarding the balance of the loan proceeds distributed by Lazz to defendant Michael Zeer, that distribution is not a fraudulent transfer. When a borrower obtains a loan fully secured by collateral, the borrower may do whatever the borrower wants with the proceeds of the loan *unless* the loan is predicated on the loan proceeds being used for a specific purpose. While the Plaintiff/Trustee has attached the affidavits of two bank officers indicating that the NCB loan was predicated on a belief that the loan proceeds would be used to develop the property, there is nothing in the record to suggest that NCB had an issue, at the time the loan was disbursed, with Lazz distributing part of the proceeds of the loan to her husband, defendant Michael Zeer. The deposition testimony on both defendant/debtor Laura Zeer and defendant Michael Zeer is that the loan proceeds were intended to be used to develop the property, but the project fell through. The fact that Defendants ultimately failed to use the money for the purpose for which it was intended does not create a fraudulent transfer On the facts of this case, when Lazz obtained the proceeds of the loan, Lazz was free to do as it pleased with the proceeds.

14

Furthermore, the Plaintiff/Trustee has produced no evidence to show that Lazz obtained the loan from NCB or made a transfer to Trio and defendant Michael Zeer with the intent to defraud NCB. Since the transfers from Lazz to Trio and defendant Michael Zeer were made at the closing, it seems quite clear that NCB was fully aware of the transfers to Trio and Michael Zeer. It is impossible for the Trustee to argue that the transfer of the loan proceeds was made with the intent to defraud NCB when NCB knew about the transfers. In addition, the NCB loan was secured by a mortgage on real property. NCB expected its loan to be repaid through development of the property or, in the event payments were not made, foreclosure. It defies common sense to argue that NCB expected to be repaid from the proceeds of its own loan. The distribution of loan proceeds, therefore, was not made with the intent of depriving NCB of repayment. Lazz's transfer of the loan proceeds to Trio Investments and Michael Zeer is not a fraudulent transfer.

Looking to the badges of fraud set forth at MCL 566.34(2) does not further Plaintiff/Trustee's case. Defendant/debtor Laura Zeer had not been sued at the time the NCB loan proceeds were distributed, the distribution of the loan proceeds was disclosed at the loan closing, the creditor retained a security interest to protect repayment of the loan, Defendant/Debtor did not abscond or conceal assets from the creditor, and the transfer was simultaneous with incurring the debt. In short, none of the badges of fraud are present in this case.

The Plaintiff/Trustee also fails to present evidence sufficient to support a claim for constructive fraud. In order for a transfer to constitute constructive fraud as to a creditor, the transfer has to be for less than reasonably equivalent value and render the borrower insolvent.

15

The transfers by Lazz to defendant Michael Zeer were not for less than reasonably equivalent value. Of the loan proceeds, $340,000 paid off debt owed to Trio Investments. Since the title company disbursed funds directly to Trio Investments, the Court presumes that the payoff was necessary to clear title to the property. It may be that the transfer by Lazz to defendant Michael Zeer was for less than reasonably equivalent value, but the transfer did not render Lazz insolvent. At the time of the transfers, Lazz held title to real property located in Shelby Township and Lazz had given NCB a mortgage on the real property. Since Lazz held the title to the real property, Lazz was not insolvent because it could liquidate the real property and pay off its debt to NCB. Unfortunately for NCB, in the two years between when Lazz gave NCB a mortgage and the date on which the mortgage was foreclosed, the value of the property decreased and PNC (successor in interest to NCB) has filed an unsecured claim for the deficiency balance in defendant/debtor Laura Zeer's bankruptcy. However, because there is no set of facts which would show that Lazz's transfer of proceeds to Trio and defendant Michael Zeer rendered Lazz insolvent at the time of the transfers, the Plaintiff/Trustee cannot show that either of the named Defendants or any of the prospective defendants named in Plaintiff's Motion to Amend ( i.e. Patrick George and Trio Investments) are the recipients of a fraudulent transfer.

Finally, with regards to the NCB loan, the Plaintiff/Trustee makes much of the fact that in June, 2007, Defendant Laura Zeer submitted a personal financial statement showing a "book" value net worth of $1,690,000 and a "market" value net worth of $2,790,000. The Plaintiff/Trustee implies that defendant/debtor Laura Zeer's assets in June of 2007 were not worth the amounts disclosed on the statement. While a false financial statement is relevant to an individual creditor's cause of action for nondischargeability under 11 U.S.C. § 523(a)(2)(B), it is

16

not relevant to Plaintiff/ Trustee's present action. Plaintiff/Trustee may be attempting to argue that this allegedly false financial statement shows that defendant/debtor Laura Zeer, through Lazz "intended to defraud" NCB when Lazz obtained the loan. NCB has not pursued an action under 11 U.S.C. § 523 and this Court finds that even if the financial statements provided to NCB were inaccurate, false financial statements do not create a fraudulent transfer action. Plaintiff/Trustee has no cause of action for the fraudulent transfer of the NCB proceeds.

2. The Citizens Bank Loan

On March 6, 2008, defendant/debtor Laura Zeer borrowed $617,000 from Citizens First Mortgage. The parties do not dispute that the loan was secured by a mortgage against a 4.55 acre parcel of vacant property in Davison Township. It is undisputed that the loan proceeds were split three ways. As explained by defendant Michael Zeer, at his deposition:

Q. Okay, we'll talk about the proceeds from the Davison Irish loan. [The Trustee is referring to property deeded to Laura Zeer by Davidson Irish, LLC. This property secured the loan from Citizens Bank

A. The proceeds from the Davison Irish loan were divided into thirds between myself, Patrick George, and Sel Kesto. And there was – you have a statement on what money was being held by Citizens First Bank, they were doing a direct withdrawal, so I believe the net proceeds of my share was about $150,000, 158,000. And the rest of the money was disbursed to them and some of the money left in the account for payment.

Q. Some of the money you lost gambling came from the Davison Irish loan proceeds, yes?

A. Yes.

Q. And of those proceeds, you received about $158,000?

A. I believe somewhere like that. I know – I think we had that.

Deposition of defendant Michael Zeer, March 16, 2010, at 33-34.

The Trustee alleges that the transfer of a portion of the loan proceeds by defendant/debtor

Laura Zeer to her husband, defendant Michael Zeer, was a fraudulent transfer. Because no documents regarding these transfers were provided to the Court, it is unclear whether Citizens Bank had knowledge of the loan proceed transfers to Michael Zeer, Patrick George and Sel Kesto. For the following reasons, even if Citizens Bank had no knowledge that defendant/debtor Laura Zeer turned over the loan proceeds to Michael Zeer, Patrick George and Sel Kesto, the Plaintiff/Trustee cannot state a cause of action against those three as the recipients of fraudulent transfers under either 11 U.S.C. § 548 or MCL 566.34.

With respect to 11 U.S.C. § 548(a)(1)(A), the Trustee may avoid a transfer if the transfer was made with the intent to hinder, delay, or defraud a creditor. There are no documents or testimony which show that defendant/debtor Laura Zeer transferred loan proceeds of the Citizens loan to Michael Zeer, Patrick George or Sel Kesto with the actual intent to defraud Citizens Bank. As with the NCB loan, defendant/debtor Laura Zeer transferred the proceeds immediately upon receiving the funds. The real property which secured the loan was still titled in defendant/debtor Laura Zeer's name. Citizen's Bank has not filed any pleadings alleging that the transfer of the loan proceeds was concealed. Defendant/debtor Laura Zeer did not borrow the funds for the purpose of defrauding any creditor and she did not transfer the proceeds to avoid payment to a creditor. The undisputed fact that defendant/debtor Laura Zeer distributed the proceeds of the loan to third parties does not create a fraudulent transfer unless Plaintiff/Trustee can demonstrate that the transfer was made with the intent to avoid paying a creditor. None of the badges of fraud that would show that defendant/debtor Laura Zeer was making a fraudulent transfer exist in this case. Defendant/Debtor did not transfer the proceeds of the loan to avoid payment of a judicial creditor, she did not conceal or abscond with assets, and the transfer did not render

18

Defendant/Debtor insolvent. Because of the absence of any of the badges of fraud, and in the absence of any allegations by Citizens Bank that Defendant/Debtor obtained the loan through fraudulent means, the Court finds that Plaintiff/Trustee cannot state a cause of action against Michael Zeer, Patrick George, or Sell Kesto as the recipients of fraudulent transfers under § 548(a)(1)(A).

The Plaintiff/Trustee also fails to state the elements of a constructive fraud case. For a transfer to be constructively fraudulent, the Plaintiff/Trustee must show that the transfer was made for less than reasonably equivalent value and that the transfer rendered the Defendant/Debtor insolvent. While it does appear that defendant/debtor Laura Zeer received no consideration for the transfer of the loan proceeds to defendant Michael Zeer, Patrick George, and Sel Kesto, it is clear that the transfers did not render defendant/debtor Laura Zeer insolvent. At the time the loan proceeds were distributed, defendant/debtor Laura Zeer still owned the real property which secured repayment of the loan. While the value of the property may now be less than the balance owed on the note, that does not establish that Defendant/Debtor was insolvent at the time she transferred the loan proceeds in March. Since defendant/debtor Laura Zeer transferred the proceeds at the same time she granted the mortgage, the Court presumes that the value of the real property retained by Defendant/Debtor was at least equal to the amount of the loan.

Plaintiff/Trustee also asserts that defendant/debtor Laura Zeer's transfer of the Citizen's loan proceeds constitutes a fraudulent transfer under state law. Because the elements of a cause of action under MCL 566.34 track the cause of action under 11 U.S.C. § 548, and the Plaintiff/Trustee cannot maintain an action under § 548, she likewise cannot maintain and action

19

under the state law statue.

Summary Judgment is granted to Defendants on Count IV of the Plaintiff/Trustee's First Amended Complaint.

## B.  The Trustee's Causes of Action under 11 U.S.C. § 727

### 1.  Overview

The Bankruptcy Code provides for two distinct types of nondischargeability actions against a debtor.  11 U.S.C. § 523 allows an individual creditor to prevent a debtor from obtaining a discharge if the debtor has engaged in specified bad acts against the creditor.  11 U.S.C. § 523(a)(2) specifically precludes a debtor from obtaining a discharge of a debt which was incurred by fraudulent representations made to induce a creditor to advance funds or services.  "The purpose of § 523(a)(2) is to prevent debtors from retaining the benefits of property obtained through fraud."  *XL/Datacomp, Inc. v. Wilson (In re Omegas Group, Inc.)*, 16 F.3d 1443, 1451 (6th Cir. 1994).  "[W]hen a creditor asserts a cause of action under § 523(a), it seeks to vindicate only its own debt alone."  *Fort Knox Fed. Cr. Union v. Brown (In re Brown)*, 224 B.R. 595, 598 (Bankr. W.D. Ky. 1998).  Actions brought under § 523 are *brought by the creditor* alleging that it has been deceived by a debtor's misrepresentations.

The other category of nondischargeability actions are authorized by 11 U.S.C. § 727. Under § 727, a debtor is denied a discharge if the debtor engages in conduct which thwarts the bankruptcy process.  "The underlying purpose of § 727 is to protect the integrity of the bankruptcy system by denying a bankruptcy discharge to a debtor who engages in certain specified objectionable conduct that is of a magnitude broader than injury to a single creditor." *Bankruptcy Receivables Management v. DeArmond (In re DeArmond)*, 240 B.R. 51, 55 (Bankr.

20

C.D. Cal. 1999). The bankruptcy process requires full disclosure as to the financial affairs of the debtor, so that the trustee may determine what assets are available for liquidation and distribution to creditors. If a debtor fails to disclose the transfer of assets made within a year of the filing of the petition, lies about the existence of assets, or fails to provide sufficient information to ascertain the financial condition of the debtor, there are grounds for denial of a discharge. In short, 11 U.S.C. § 523 provides an individual creditor with a remedy for bad acts committed by a debtor **against that creditor.** The remedy for a § 523 violation is a denial of a discharge as to that creditor's specific debt. 11 U.S.C. § 727 provides creditors or the trustee with a remedy for bad acts committed by the debtor **against the bankruptcy system** (i.e. attempts by a debtor to misinform or mislead the court in an attempt to thwart the bankruptcy process). The remedy for a § 727 violation is a denial of discharge in its entirety.

The distinction between the two types of nondischargeability actions is important. Allegations of misconduct against a specific creditor must be raised by that creditor in an action under § 523. Allegations of misconduct against a specific creditor do not create a cause of action under § 727 <u>unless </u>the debtor also fails to fully disclose the debtor's financial condition and the disposition of assets prior to filing bankruptcy.

In the instant case, the Plaintiff/Trustee's causes of action against debtor/defendant Laura Zeer under 11 U.S.C. § 727 fail because none of her alleged misconduct was directed at the bankruptcy system. To the extent that there was misconduct, that misconduct was directed at NCB and Citizens Bank.[10] As Defendants' Counsel stated at oral argument, the Plaintiff/Trustee

---

[10]Neither NCB or Citizens Bank filed actions to block the discharge of their debts under 11 U.S.C. §§ 523(a)(2)(A) or (a)(2)(B).

is attempting to fit a square peg (nondischargeability under 11 U.S.C. § 523) into a round hole

(nondischargeability under 11 U.S.C. § 727). A list of the allegations made by the

Plaintiff/Trustee makes it clear that the alleged misconduct relates primarily to defendant/debtor

Laura Zeer's transactions with NCB and Citizens Bank.[11] The Plaintiff/Trustee seeks to block

defendant/debtor Laura Zeer's discharge under § 727 based on the following alleged acts:

> (1) The Plaintiff/Trustee alleges that on June 6, 2007, defendant/debtor Laura Zeer submitted a false financial statement to NCB. In the alternative, the Plaintiff/Trustee argues that if the statement was no false, then defendant/debtor Laura Zeer failed to account for the disposition of assets listed on that statement.

> (2) The Plaintiff/Trustee alleges that in August, 2007, defendant/debtor Laura Zeer distributed the proceed of the NCB loan with the intent to deprive creditors (presumably NCB) from collecting on the loan.

> (3) The Plaintiff/Trustee alleges that in March 2008, shortly after receiving a demand letter from NCB, defendant/debtor Laura Zeer removed her name from a bank account jointly held with her defendant/husband Michael Zeer.

> (4) The Plaintiff/Trustee alleges that on March 26, 2008, defendant/debtor Laura Zeer distributed proceeds of the Citizens Bank loan with the intent to deprive creditors (presumably Citizens Bank) from collecting the loan.

> (5) Defendant/debtor Laura Zeer failed to account for her 2009 income.

The creditors who were supposedly harmed by the alleged misconduct set forth above

(NCB and Citizens Bank) have not filed actions to block Debtor's discharge under 11 U.S.C.

§ 523. The Plaintiff/Trustee is trying to recharacterize defendant/debtor Laura Zeer's conduct as

conduct which would give rise to a denial of discharge under § 727. The Court will discuss each

of the Plaintiff/Trustee's specific grounds for denial of discharge under § 727 for the purpose of

---

[11]The Plaintiff/Trustee has filed two affidavits from employees of PNC Bank: Lon Keast (Exhibit L) and Sue Misajlovski (Exhibit M). These affidavits might have supported an action under 11 U.S.C. § 523, but they provide no support for an action under 11 U.S.C. § 727.

22

fully explaining why the Plaintiff/Trustee cannot state any cause of action under § 727.

## 2. Section 727(a)(2): Transfer or Concealment of Property (Count I)

11 U.S.C. § 727(a)(2) states in relevant part:

(a) The court shall grant the debtor a discharge, unless –

> (2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed –

>> (A) property of the debtor, within one year before the date of the filing of the petition; or

>> (B) property of the estate, after the date of the filing of the petition.

To prevail under § 727(a)(2)(A) the moving party must establish two elements: (1) a disposition of property, such as concealment, and (2) a subjective intent on the debtor's part to hinder, delay or defraud a creditor through the act of disposing of the property. *Keeney v. Smith (In re Keeney )*, 227 F.3d 679, 683 (6th Cir.2000). To prevail under § 727(a)(2)(B), the moving party must establish four elements: that, "(1) the debtor transferred or concealed property, (2) such property constituted property of the estate, (3) the transfer or concealment occurred after the filing of the bankruptcy petition, and (4) the transfer or concealment was made with the intent to defraud the bankruptcy trustee." *Hunter v. Sowers (In re Sowers )*, 229 B.R. 151, 156 (Bankr.N.D.Ohio 1998).

Section 727(a)(2) requires proof of actual intent. However, because a debtor is unlikely to directly testify that his or her intent was fraudulent, a finding of actual intent may be based on circumstantial evidence or on inferences drawn from a debtor's course of conduct. Courts look to

23

the following "badges of fraud" in determining whether intent to defraud can be inferred:

1. The lack or inadequacy of consideration;

2. A family, friendship, or other close associate relationship between the parties;

3. The retention of possession, benefit, or use of the property in question;

4. The financial condition of the party sought to be charged both before and after the transaction in question;

5. The existence or cumulative effect of a pattern or series of transactions or course of conduct after incurring of debt, onset of financial difficulties, or pendency or threat of suit by creditors; and

6. The general chronology of events and transaction.

*Stevenson v. Cutler (In re Cutler)*, 291 B.R. 718, 723 (Bankr. E.D. Mich. 2003).

In the present case, Plaintiff/Trustee alleges that defendant/debtor Laura Zeer transferred or concealed property in violation of § 727(a)(2)(A) by: (1) transferring all of her 2009 income to her husband in the months preceding the filing of her bankruptcy petition and failing to disclose the transfer of that income by omitting it from paragraph 10 of her Statement of Financial Condition, (2) testifying at her § 341 hearing that she had no bank accounts in 2008 and 2009, notwithstanding the fact that her name appeared on a Comerica Bank checking account in early 2008, and banking records subpoenaed by the Plaintiff/Trustee indicate that regular deposits were made to that account, (3) transferring the loan proceeds from the NCB and Citizens loans to her husband or others for fraudulent purposes.[12]

With respect to the first allegation, that defendant/debtor Laura Zeer transferred her 2009

---

[12]The Plaintiff/Trustee also alleges that Laura Zeer failed to disclose the transfers of loan proceeds on her bankruptcy Statement of Financial Affairs (SOFA). The issue of proper disclosure on the SOFA falls within § 727(a)(4) rather than § 727(a)(2), and will be addressed in the section B(4) of this Opinion.

income to her husband with intent to defraud creditors, the Court notes that Defendant/Debtor is married to her husband, defendant Michael Zeer, they have three children, and Defendant/Debtor's schedule I indicates that her husband is (or was, at the time the petition was filed) unemployed. Both defendant/debtor Laura Zeer and her husband, defendant Michael Zeer, at their depositions, indicated that defendant/debtor Laura Zeer's income was used to pay household expenses. The Court finds no basis for concluding that defendant/debtor Laura Zeer "diverted" income to her husband in an effort to thwart her creditors. Rather, Defendant/Debtor's income, which was disclosed in paragraph 1 of her SOFA, appears to have been her only source of income at the time the petition was filed and was used to pay for daily living expenses and household bills.

As to the allegation that defendant/debtor Laura Zeer removed her name from the joint checking account she had with her husband at Comerica Bank (account 3276) for some improper purpose, the Plaintiff/Trustee focuses on the fact that she removed her name from the account in March, 2008, shortly after NCB sent her a demand letter on the NCB loan. While the Court concurs that this fact and the timing of the action look "suspect", the party that was arguably harmed by this conduct is NCB and the harm occurred in 2008, 18 months prior to the filing of defendant/debtor Laura Zeer's bankruptcy petition. In order to state a claim under § 727(a)(2), the transfer must have occurred within one year prior to the filing of the petition. Transfers which occur beyond the one year time frame are not construed by the Bankruptcy Code to be an attempt to thwart the bankruptcy system. *C & H Electrical v. Newell (In re Newell)*, 321 B.R. 885, (Bankr. N.D. Ohio 2005)("[T]he petition date serves the function of the gatekeeper in any § 727(a)(2) analysis. . . no matter a debtor's intent, transfers of property that occur more than one

year prior to the filing of a debtor's bankruptcy petition do not fall within the purview of either paragraph (A) or (B) of § 727(a)(2)").[13] Since defendant/debtor Laura Zeer removed her name from this bank account more than 1 year prior to the filing of her bankruptcy petition, the removal was not a violation of § 727(a)(2).

With regard to the third allegation, that defendant/debtor Laura Zeer failed to disclose the transfer of both the NCB and Citizens Bank loan proceeds, the Court finds that her disposition of the NCB and Citizens Bank loan were not transfers made with any intent to hinder or delay her creditors. The first alleged transfer, that is, the transfer of the proceeds of the NCB loan was made more than two years prior to the filing of the bankruptcy, and the details of the transfer, $340,000 to Trio Investments and $137,657.36 to Lazz, were fully disclosed to NCB. In addition to the fact that the transfer occurred more than one year prior to the bankruptcy, there is no evidence that the distribution of the loan proceeds was made with the intent to defraud creditors. For all of the reasons set forth above in the discussion of fraudulent transfers, it is nonsensical to argue that the distribution of loan proceeds constitutes a transfer made with the intent to defraud the lender.

Defendant/debtor Laura Zeer's distribution of the proceeds from the Citizens Bank loan also occurred more than one year prior to the filing of her bankruptcy and is, therefore, outside the look back period provided in § 727(a)(2)(A). However, even if the distribution of the

---

[13]There is some evidence that Laura Zeer's name was on another account (the 9065 account) for the sole purpose of allowing Ms. Zeer to list the account on her personal financial statement, notwithstanding the fact that the money in the account may not have been Ms. Zeer's. While NCB may take issue with the inflation of Ms.Zeer's assets, taking her name off an account in which she never had any true pecuniary interest more than a year before the filing of her bankruptcy petition does not constitute a fraudulent transfer under 11 U.S.C. § 727(a)(2).

proceeds had been within the applicable time period, the Plaintiff/Trustee has presented no facts which would support an argument that the distribution was made for the purpose of hindering or delaying creditors. Defendant/debtor Laura Zeer obtained the loan proceeds in exchange for giving Citizens Bank a mortgage on real property. She represented to the Bank that the money would be used to develop the real property. Both Defendants testified regarding how the proceeds were distributed (three ways, with Michael Zeer getting $158,000 and two other partners of Davison Irish splitting the balance). Defendant/debtor Laura Zeer distributed the proceeds immediately on receipt of the money At that point in time, Citizen's loan was secured by real property. Citizens Bank anticipated that it would be rapid through development of the property, or if payments were not made, foreclosing on the property. Defendant/debtor Laura Zeer's distribution of the loan proceeds for the purpose of developing the property is not a transfer made with the intent to defraud a creditor- it was a transfer made with the intent of generating a stream of income to repay creditors.

Because there are no genuine issues of material fact regarding the transfer of assets with the intent of hindering or delaying creditors, Plaintiff/Trustee cannot state a cause of action under 11 U.S.C. § 727(a)(2)(A). Defendants' Motion for Summary Judgment on Count I of the First Amended Complaint is granted.

**3. Section 727(a)(3): Failure to Keep or Preserve Records (Count II)**

Section 727(a)(3) bars a debtor's discharge if:

the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case[.]

27

A debtor is required to "provide the trustee or creditors with enough information to ascertain the debtor's financial condition and track his financial dealings with substantial completeness and accuracy for a reasonable period past to present." *General Motors Co. v. Heraud (In re Heraud)*, 410 B.R. 569, 579 (Bankr. E.D. Mich. 2009)(*quoting Bay State Milling Co. v. Martin (In re Martin)*, 141 B.R. 986, 995 (Bankr. N.D. Ill. 1992). "The adequacy of debtor's records must be determined on a case by case basis. Considerations to make this determination include debtor's occupation, financial structure, education, experience, sophistication and any other circumstances that should be considered in the interest of justice." *Turoczy Bonding Co. v. Strbac (In re Strbac)*, 235 B.R. 880, 882 (6th Cir. BAP, 1999), *quoting United States v. Trogdon (In re Trogdon)*, 111 B.R. 655, 658 (Bankr.N.D.Ohio 1990).

The burden of proof under § 727(a)(3) shifts. The plaintiff must establish a prima facie case showing the debtor failed to keep adequate records. If the plaintiff establishes a prima facie case, the burden then shifts to the debtor to explain why the failure to keep records, under the circumstances of the case, is justified. The ultimate burden of persuasion rests with the plaintiff. *CM Temporary Services, Inc. v. Bailey (In re Bailey)*, 375 B.R. 410 (Bankr. S.D. Ohio 2007). The standard of proof for discharge objections under § 727(a) is by a preponderance of the evidence. *Barclays/American Bus. Credit, Inc. v. Adams (In re Adams)*, 31 F.3d 389, 394 (6th Cir.1994).

In the present case, the Plaintiff/ Trustee contends that debtor/defendant Laura Zeer should be denied a discharge under § 727(a)(3) because she failed to produce tax returns for several business entities that appear on her personal tax return, failed to deliver records relating to the disposition of the NCB and Citizens loan proceeds, failed to adequately explain the

disposition of the proceeds of the two loans, failed to explain why she removed her name from the Comerica Bank account, and failed to explain or produce evidence regarding the assets listed on personal financial statements provided to the banks.

After a careful review of the entire record, the Court is satisfied that the Defendants have provided the Plaintiff/Trustee with all of their records relating to the two loan transactions, bank account records for the two bank accounts at Comerica on which defendant/debtor Laura Zeer's name appeared, and an affidavit explaining the disposition of assets. While the record suggests that Defendants were sloppy record keepers, there is nothing in the record to indicate that the defendant/debtor Laura Zeer concealed, destroyed, or mutilated records. The Court notes that the Plaintiff/Trustee, presumably in an attempt to obtain a more complete picture of the loan transactions, subpoenaed documents from Comerica Bank, Metropolitan Title, Accurate Appraisals Realty, Inc., National City Bank and Michigan Commerce Bank. Based on the documents supplied to the Court, the records of these entities were as sloppy as those of the Defendants. In any case, the documents supplied by the Defendants in conjunction with their sworn testimony at multiple depositions, is sufficient to ascertain the financial condition and dealings of defendant/debtor Laura Zeer. The documents and testimony establish that defendant/debtor Laura Zeer and Lazz owned two pieces of property. Defendant/debtor Laura Zeer obtained loan proceeds by granting mortgages against the properties. The loan proceeds were spent. Any other assets allegedly owned by defendant/debtor Laura Zeer either never existed or belonged to other individuals (family members or Michael Zeer). While the Plaintiff/Trustee may wish for more complete records, no additional records are necessary to explain defendant/debtor Laura Zeer's financial condition.

The Plaintiff/Trustee has failed to state a cause of action under 11 U.S.C. § 727(a)(3).

### 3. Section 727(a)(4): False Oath or Account (Count III)

Section 727(a)(4) bars a debtor's discharge if a debtor, "knowingly and fraudulently in or in connection with the case":

(A) made a false oath or account;

(B) presented or used a false claim;

(C) gave, offered, received, or attempted to obtain money, property, or advantage, or a promise of money, property, or advantage, for acting or forbearing to act; or

(D) withheld from an officer of the estate entitled to possession under this title, any recorded information, including books, documents, records, and papers, relating to the debtor's property or financial affairs[.]

11 U.S.C. § 727(a)(4).

The Sixth Circuit Bankruptcy Appellate Panel, in an unpublished case, *Pinnacle Technology Resources, Inc. v. Spencer (In re Spencer),* 359 B.R. 357(table), 2006 WL 3539294 (6th Cir. BAP 2006), succinctly set forth the standard for denial of discharge under § 727(a)(4)(A):

The party seeking denial of the debtor's discharge has the burden of proof, by a preponderance of the evidence, of showing: (1) the statement was made under oath (statements made in a bankruptcy case are made under oath); (2) the statement was false; (3) the statement related materially to the bankruptcy (a fact is material if it leads to discovery of or relates to the existence or disposal of property of the debtor); (4) the debtor knew the statement was false (knowledge is defined as the debtor knowing the truth and not stating it; however, reckless indifference to the truth, not mistake or inadvertence, also can be knowledge); and (5) the debtor made the statement with fraudulent intent (intent may be inferred from circumstantial evidence or from the debtor's course of conduct).

*In re Spencer*, 359 B.R. at *4 (citations omitted).

In the present case, the Plaintiff/Trustee alleges that defendant/debtor Laura Zeer violated 11 U.S.C. § 727(a)(4)(A) by failing to disclose bank accounts and the distribution of loan

30

proceeds on Debtor's Statement of Financial Affairs (SOFA).[14]  The Plaintiff/Trustee also alleges

that defendant/debtor Laura Zeer  violated § 727(a)(4)(A) by failing to include on

defendant/debtor Laura Zeer's bankruptcy schedules assets that had been listed on the financial

statement debtor/defendant Laura Zeer presented to NCB in March, 2007.

After carefully reviewing defendant/debtor Laura Zeer's bankruptcy schedules and all of

the documents filed by Plaintiff/Trustee, the Court finds that there are no grounds to support the

Plaintiff/Trustee's argument that defendant/debtor Laura Zeer  should be denied a discharge under

11 U.S.C. § 727(a)(4)(A) With respect to the joint checking account at Comerica Bank, it is

undisputed that Laura Zeer removed her name from the account in March, 2008, thus the account

was not an asset belonging to Debtor at the time she filed for bankruptcy.  With regards to

disclosing the bank account on Debtor's SOFA, question 11 of the SOFA only requires a debtor

to disclose changes made within one year of the date of the petition.  Debtor's failure to

specifically state on her SOFA that her name had been removed from a joint bank account in

March, 2008 is not a violation of § 727(a)(4).  If there is no duty to disclose, the failure to

disclose is not an intentional misrepresentation or a false oath.

As to the loan proceeds, the Plaintiff/Trustee argues that defendant/debtor Laura Zeer's

failure to list the distribution of the loan proceeds as "transfers" on her SOFA constitutes a false

oath under § 727(a)(4).  Because of the nature of the "transfers", that is, distribution of loan

proceeds made contemporaneously with obtaining the loan proceeds, the Court finds that the

---

[14]Line 10 of the Statement of Financial Affairs asks a debtor to "[l]ist all other property, other than property transferred in the ordinary course of the business or financial affairs of the debtor, transferred either absolutely or as security within two years immediately preceding the commencement of this case."

failure to list the transfers does not violate § 727(a)(4)(A). That section requires that a debtor know that the alleged misstatement is false and that the alleged misstatement be made with fraudulent intent. Given that the Court has concluded that the distribution of the loan proceeds is not a fraudulent transfer, the Court finds that the omission of these "transfers" on the SOFA was not done with fraudulent intent in violation fo § 727(a)(4)(A).

The Plaintiff/Trustee argues that Defendant/Debtor's failure to list assets which appeared on a June, 2007 financial statement constitute a violation of § 727(a)(4). Defendant Michael Zeer's affidavit (Defendant's Ex. I) indicates that the assets listed on the unsigned financial statement provided by defendant/debtor Laura Zeer to NCB in March, 2007 either do not exist, were lost or sold pre-petition, or do not belong to defendant/debtor Laura Zeer. Defendant Michael Zeer suggests that the 2007 financial statement was inaccurate at best, and fraudulent at worst. However, as noted above, the party harmed by defendant/debtor Laura Zeer's misrepresentation in 2007 is the creditor, NCB, not the Plaintiff/Trustee. There is nothing in the record to support an argument that on October 26, 2009, the date defendant/debtor Laura Zeer filed her bankruptcy petition, she had any assets other than those listed on her bankruptcy schedules. The Court is satisfied that Debtor's bankruptcy documents do not contain any false oaths. Plaintiff/Trustee has failed to state a cause of action under 11 U.S.C. § 727(a)(4).

### 4. Section 727(a)(5): Failure to Explain Loss of Assets (Count V)

Section 727(a)(5) denies debtor a discharge where he has "has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities[.]" This section attempts to balance two competing concerns under the Bankruptcy Code: "(1) the trustee and creditors' right to question

32

the debtor about their financial affairs; and (2) the knowledge that debtors will not always be completely forthcoming with information about their financial activities." *Kovacs v. McVay (In re McVay)*, 363 B.R. 824, 830-31 (Bankr N.D. Ohio 2006). Section 727(a)(5) conditions "discharge on a debtor satisfactorily explaining any prepetition diminution or loss of asset." *Id*. at 831. Under this section a debtor is required to disclose all vital information. There is no requirement of bad intent or scienter. It does not matter how the loss or deficiency occurred. "[T]he propriety of the loss, whether for illegal, immoral or otherwise imprudent activities, is not the direct concern of § 727(a)(5)." *Baker v. Reed (In re Reed)*, 310 B.R. 363, 368 (Bankr. N.D. Ohio 2004). Section 727(a)(5) is simply concerned with the adequacy of the debtor's explanation." *McVay*, 363 B.R. at 831 (citations omitted).

The focus of the Plaintiff/ Trustee's argument under § 727(a)(5) is defendant/debtor Laura Zeer's June 6, 2007 financial statement. According to that statement, in June, 2007, Defendant/Debtor had assets valued at more than $3 million. Her SOFA, dated October 26, 2009, indicates that she did not transfer any assets within two years of her bankruptcy petition. Thus, the Plaintiff/Trustee seeks an explanation regarding the disposition of those assets. The Plaintiff/Trustee raises the same question regarding the disposition of the NCB and Citizens Bank loan proceeds.

An affidavit filed by defendant Michael Zeer (Defendants' Ex. I) indicates that the financial statement submitted to NCB in the name of Laura Zeer was actually a "family" financial statement, and it included assets owned by Michael Zeer's father and siblings. The affidavit states that defendant/debtor Laura Zeer did not own any of the assets listed and thus cannot account for them. There is no evidence to contradict the affidavit, that is, to indicate that in

33

March 2007, defendant/debtor Laura Zeer actually owned the assets listed on the financial statement. While defendant Michael Zeer's candid admission is disturbing because it renders the financial statement entirely misleading on its face, the fact that Defendant/Debtor submitted a grossly inaccurate financial statement to NCB two years prior to the date on which she filed for bankruptcy does not create an action for the Plaintiff/Trustee under § 727(a)(5). Section 727(a)(5) bars discharge when a debtor cannot accurately account for the disappearance of assets. In this case, defendant/debtor Laura Zeer has adequately explained what happened to the assets in question– she never had them. Plaintiff/Trustee has failed to state a claim under § 727(a)(5). .

## Conclusion

For the reasons stated in this Opinion, the Defendants' Motion for Summary Judgment is granted and Plaintiff/Trustee's First Amended Complaint is dismissed in its entirety.

Signed on August 31, 2011

```
                         /s/ Marci B. McIvor
                        Marci B. McIvor
                        United States Bankruptcy Judge
```

34